IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GEORGE A. NELSON                                                                      PLAINTIFF

       v.                   Civil No. 05-5067

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                           DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff George A. Nelson brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural and Factual Background**

The plaintiff filed his application for DIB on June 17, 2003, alleging an onset date of June 1, 2002. (Tr. 42-53.) Plaintiff is eligible for DIB through December 31, 2006. (Tr. 67.) The application was initially denied (Tr. 22-23; 26-29) and that denial was upheld upon reconsideration (Tr. 24-25; 32-33). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 34-35.)

On June 3, 2004, a hearing was held by the ALJ. The plaintiff was represented by counsel at this hearing. (Tr. 231.) The ALJ issued an unfavorable ruling on November 12, 2004, deciding that the plaintiff was not disabled within the meaning of the Act. (Tr. 9-20.) The

plaintiff then requested a review of the hearing by the Appeals Council (Tr. 7-8), which denied that request on March 7, 2005 (Tr. 3-5); thus, the ALJ's decision became the final action of the Commissioner. The plaintiff filed his complaint with this court on April 18, 2005, seeking judicial review of that decision. (Doc. 1.) Both parties have filed appeal briefs with the court. (Docs. 7, 8.) This case is before the undersigned pursuant to the consent of the parties. (Doc. 4.)

At the time of the hearing, plaintiff was 35 years of age. He had received his GED after he completed only tenth grade in high school, where he did take some special education classes for math skills. (Tr. 42, 61, 73, 84, 234-35.) His past relevant work included work in repossessions for rent-to-own stores and with computer repair. (Tr. 56, 234.) He also spent three years in military service, from which he was honorably discharged. (Tr. 235.) Plaintiff is presently on military disability due to a 60% disability resulting from injuries and pain to his back and knee, and his frequent migraine headaches. (Tr. 235-236.)

In his application for DIB, plaintiff alleged that his was disabled due to back and left knee injuries, limited back mobility, anxiety, paranoia, and depression. (Tr. 55.) He also mentioned in his Disability Report Adult (DRA) that he was treated my doctors for migraine headaches, high blood pressure, and allergies. (Tr. 57.) Plaintiff reported in this DAR that he was taking medications for depression, anxiety, migraines, and pain. (Tr. 60.) The medical records support that plaintiff received treatment for his back injury (Tr. 55, 57, 71-73, 98, 102, 106, 124, 129, 130, 136, 144, 145, 148, 149, 150-151), anxiety (Tr. 55, 57, 74, 84, 95, 96, 99, 190), paranoia (55, 74, 84, 99, 105), depression (Tr. 55, 57, 74, 84, 100, 105, 109, 126, 127, 135, 138, 142, 154, 172, 173, 190), and migraines (Tr. 57, 71, 83, 84, 98, 102, 106, 121, 124, 127, 129, 132, 134,

137, 140, 141, 143, 184, 209, 214, 215). Additionally, plaintiff was treated for allergies (Tr. 57, 84, 100, 172), chronic obstructive pulmonary disease (COPD) (Tr. 210, 212-213, 217, 220), and Alpha-1 Antitrypsin Deficiency (Tr. 84, 209, 210, 212-213, 220). Plaintiff reported some difficulties with alcohol and marijuana use (Tr. 95, 96,, 98, 103, 105, 126, 127, 138, 142, 153, 173, 190, 218).

Plaintiff testified that he suffered from migraine headaches on at least a weekly basis and that the headaches usually last an hour to two, but that he has had some that lasted twelve to fourteen hours. (Tr. 236-237.) He has been seeing Dr. Michael Morris, a neurologist, for several months prior to the hearing, and Dr. Morris has provided plaintiff with numerous medications for the migraines, however none of the medications have helped plaintiff's condition. (Tr. 237.)

Plaintiff also testified that he suffers from a dull, throbbing lower back pain that radiates down his left leg. According to plaintiff, a doctor at the Veteran's Administration hospital told him not to lift more than ten pounds and not to stand for long periods of time. His prior employment as a computer repairman required him to stoop and crawl under desks to run cables, and the pain in his back prohibits him from performing these tasks. Plaintiff stated that at no time is his back pain-free, however he does get some relief through medication. He has been taking oxycodone and acetaminophen for approximately three years. (Tr. 238-241.) The back pain combined with fluid collecting on his chest has resulted in difficulties sleeping. Plaintiff stated that he is tired and aches when he wakes in the mornings. (Tr. 241.)

Concerning his lung condition, plaintiff testified that he was diagnosed with Alpha-1-Antitrypsin Deficiency, which he understands affects his liver and respiratory system. He states that this condition causes him shortness of breath, even when he is not performing strenuous

-3-

physical activity. Also, plaintiff suffers from flu-like symptoms regarding his respiratory system, for which he daily takes Allegra, Dayquil, and Tylenol Sinus. (242-244.) Dr. Templeton, a pulmonologist, is treating plaintiff for this condition.

After the hearing, the ALJ issued a decision on November 12, 2004, finding that (1) plaintiff met the nondisability requirements for a period of disability and DIB, (2) plaintiff had not engaged in substantial gainful activity since the alleged onset date, (3) plaintiff suffered from chronic back pain, mood disorders, and a history of substance abuse disorder which were considered "severe" under the regulations, (4) none of plaintiff's medically determinable impairments met any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, (5) plaintiff's claims concerning his limitations were not totally credible, (6) plaintiff retained the residual functional capacity (RFC) to lift and/or carry 25 pounds frequently and 50 pounds occasionally; to sit for a total of 6 hours and stand and/or walk for a total of 6 hours each in an 8-hour workday; and to perform work where interpersonal contact is only incidental to the work performed, complexity of the task is learned and performed by rote with few variables, little judgment is required, and supervision is simple, direct, and concrete, (7) plaintiff was unable to perform any past relevant work, (8) plaintiff had the RFC to perform "a significant range of medium work," (9) although plaintiff could not perform the full range of medium work, using the Medical-Vocational Guidelines "as a framework for decision-making" there were significant jobs in the national economy he could perform such as janitor/cleaner, food prep worker, and hand packer, and (10) plaintiff was not under a disability as defined by the Act at any time through the date of the decision. (Tr. 19-20.) Notably, the ALJ determined that plaintiff's

migraine headaches were not a severe impairment as the plaintiff had failed to show that the migraines limited his ability to perform work-related activities. (Tr. 16-17.)

The ALJ noted in the opinion that plaintiff was diagnosed as an alpha antitrypsin carrier and that Dr. Templeton had assessed plaintiff "with cough (related to either chronic bronchitis or bronchiectasis), heterozygous for alpha antitrypsin deficiency (with a level that had not been reduced to the dangerous zone and no significant obstructive lung disease on his pulmonary function test), and epigastric pain and diarrhea (related to possible cystic fibrosis)." (Tr. 15.) The ALJ made no specific finding as to whether the alpha antitrypsin deficiency and related symptoms constituted a "severe" impairment under the regulations.

The plaintiff submitted to the Appeals Council an undated letter purporting to be from his treating physician, Dr. Templeton, which was filed as Appeals Council Exhibit 1. According to this letter, plaintiff should "avoid exposure to dust, mold, smoke, or any industrial chemicals or household cleaners such as bleach or ammonia" and "should not pursue any employment that might expose him to such environments." (Tr. 220.) The plaintiff also submitted to the Appeals Council a Medical Assessment of Ability to Do Work-Related Activities (Mental) completed by Lawrence R. Thompson, a licensed social worker, and progress notes from Thompson who is employed by Wellspring Healthcare Associates. According to the assessment, plaintiff has a "good"[1] ability to follow work rules and maintain personal appearance; a "fair"[2] ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, function

---

[1] A "good" ability is defined as follows: "Ability to function in this area is limited but satisfactory."

[2] A "fair" ability is defined as follows: "Ability to function in this area is seriously limited, but not precluded."

independently, maintain attention/concentration, understand and carry out detailed or simple but not complex job instructions, and demonstrate reliability; and "poor"[3] or no ability to deal with work stresses, understand and carry out complex job instructions, behave in an emotionally stable manner, and relate predictably in social situations. Thompson's determinations were based on plaintiff's chronic depression, anxiety, learning disabilities, short-term memory deficit, and difficulty controlling anger in social settings. (Tr. 221-228.)

On appeal, the plaintiff argues that the ALJ erred in determining that the plaintiff was not disabled under the meaning of the Act where the ALJ (1) erred in failing to consider all of the impairments in combination, (2) erred in the analysis and credibility findings in regard to subjective complaints of pain and depression, (3) erred in applying the Grid to direct a finding of not disabled when the plaintiff suffered from non-exertional limitations of chronic pain and depression, (4) erred in finding an RFC permitting performance of a significant range of medium work, and (5) erred in failing to fully and fairly develop the record. (Doc. 7.)

In response, the defendant argues that (1) the ALJ properly considered the combined effects of plaintiff's impairments, (2) the record was fully and fairly developed, (3) the ALJ properly analyzed plaintiff's subjective complaints and discounted them for legally sufficient reasons, (4) substantial evidence supports the ALJ's RFC determination, and (5) proper VE testimony provides substantial evidence to support the ALJ's determination that there are jobs existing in significant numbers in the economy which plaintiff could perform. (Doc. 8.)

**Applicable Law**

---

[3] A "poor/none" ability is defined as follows: "No useful ability to function in this area."

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

## Discussion

It is clear from the ALJ's decision that the ALJ did consider plaintiff's complaints both individually and in combination. The ALJ noted that plaintiff's chronic back pain, mood disorders, and history of substance abuse disorder were not severe enough "to meet or medically equal, either singularly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 14.) "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments and determine the claimant's RFC." *See Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). The ALJ in this case established plaintiff's RFC after "a careful review of the objective medical evidence of the record as a whole." (Tr. 17.)

"The ALJ must make express credibility determinations and set for the inconsistencies in the record which cause him to reject the plaintiff's complaints." *See Masterson v. Barnhart*,

-8-

AO72A
(Rev. 8/82)

363 F.3d 731, 738 (8th Cir. 2004). The ALJ clearly considered plaintiff's subjective complaints of pain and discredited those complaints by relying upon the medical evidence in the record. Specifically, the ALJ noted that plaintiff complained about the sharp pain in his lower back, migraines, difficulty sleeping, depression, and memory loss. The ALJ stated, "it is reasonable to assume that Mr. Nelson does experience some limitations due to chronic back pain, mood disorders and history of substance abuse disorder; however, the degree to which his impairments are functionally limiting is an issue which is very much open to question." (Tr. 16.) The ALJ then proceeded to point out the medical evidences which contradict plaintiff's subjective complaints, such as (1) the medical reports from Dr. Bokhari which noted that back pain was caused by lifting heavy weights and from Dr. Becaycay which stated that the back pain was caused by a motor vehicle accident, however the accident was in the remote past, the injury did not require surgical intervention, and the back pain was mild and stable, (2) the medical reports from Dr. Bokhari, Dr. Hull, and Dr. Luelf which indicated that plaintiff's depression was well-controlled with medications including Lexapro, Clorazepate, and Citalopram, and (3) the medical reports from Dr. Hull, Dr. Bokhari, Dr. Bucaycay, and Dr. Morse which point out that the plaintiff's headaches were caused by computer work or other temporary conditions such as the death of his brother, the dependence of others on plaintiff, weather changes, and allergies; improved significantly after he quit working with computers; and were well-controlled by Fiorinal or other medications such as Topamax. Therefore, the ALJ did set forth specific reasons for questioning plaintiff's credibility and determining that plaintiff's subjective complaints were not supported by the record. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subjective complaints may be discredited if there are inconsistencies in evidence as whole); *see*

AO72A
(Rev. 8/82)

*also, Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987) (credibility of claimant's subjective testimony is primarily for ALJ to decide, not courts).

The ALJ relied upon the opinions of a VE in determining that other jobs exist in the national economy that the plaintiff can perform. The VE, through interrogatory responses, opined that while plaintiff could not perform his past relevant work, he could perform work as a janitor/cleaner, a food prep worker, and a hand packer. (Tr. 87.) This opinion was issued in response to a hypothetical question which recognized both plaintiff's physical and emotional limitations. (Tr. 89.) The VE opined that there were no jobs in the national economy when the hypothetical indicated that the person had "no useful ability to follow work rules, deal with the public, use judgment, deal with work stresses, function independently, maintain attention and concentration, understand, remember, and carry out simple instructions, and demonstrate reliability." (Tr. 89.) The evidence submitted to the Appeals Council shows that plaintiff's mental and emotional limitations are not comparable to that provided in the second hypothetical question. The plaintiff is incorrect in his claim that the ALJ considered only the Grid in determining whether plaintiff could perform other jobs in the economy. (Tr. 18.)

The ALJ did not err in finding that plaintiff had the ability to perform a significant range of medium work.[4] As discussed above, the ALJ found that the objective medical evidence did not support plaintiff's subjective complaints of pain. The ALJ noted that the plaintiff's conditions were controlled by medication and that his back injury was mild and stable. In determining a claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical

---

[4] "Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

AO72A
(Rev. 8/82)

evidence, the physical and mental activity that a claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *See Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The RFC which indicated that plaintiff could perform medium work is consistent with the medical evidence that the ALJ found credible. Thus, substantial evidence supports the ALJ's findings as the plaintiff's RFC. *See McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003).

The plaintiff also contends that the ALJ failed to fully and fairly develop the record, especially as to the plaintiff's migraines and "newly discovered Alpha-1 Antitrypsin Deficiency." The record contains numerous references to the plaintiff's migraine condition, and the ALJ thoroughly evaluated these references. recognizing that the treating physicians' opinions that the headaches were caused by the plaintiff's work with computers and based on plaintiff's own report that his migraines were well-controlled by Fiorinal, which he used periodically. (Tr. 16.) Concerning the Alpha-1 Antitrypsin Deficiency, the treating physician, Dr. Templeton, noted that plaintiff's level had not been reduced to the "danger zone," and that plaintiff did not have significant obstructive lung disease, only a restrictive defect. Further, the additional letter submitted to the Appeals Council that purports to be from Dr. Templeton, although it contains a different signature and is not on letterhead as was the previous letter, merely restates that reported complaints from the plaintiff and then states that plaintiff should avoid employment situations which expose him to dust, mold, smoke, industrial chemicals and household cleaners. (Tr. 2170-220.) It is well settled that the ALJ has a duty to develop the record fully and fairly. *See Snead v. Barnhart*, 360 F.3d 834, 836-37 (8th Cir. 2004). "This duty includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least

an examining physician, addressing the particular impairments at issue." See Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir. 2004). Here, the record does contain a thorough statement from Dr. Templeton, plaintiff's treating physician for purposes of the Alpha-1 Antitrypsin Deficiency, and the ALJ did review, discuss, and evaluate Dr. Templeton's opinions, and the ALJ did not find the Alpha-1 Antitrypsin Deficiency a severe impairment, nor does the record support an opposite finding. (Tr. 15.)

Finally, although not addressed by the ALJ, it appears that during the relevant time period, plaintiff may have been attending some form of school. According to a notation made on August 7, 2003, plaintiff contacted Dr. Hull's office requesting "a note for his school stating that his family has been seen in the Dr.'s office repeatedly this year. He's had to miss school due to illness with himself, his son, and his wife when she was having bad HA's. If pt. doesn't get a note, they will flunk him." (Tr. 172.) Plaintiff did receive a note from Dr. Hull on August 7, 2003 stating that he had been seen in the office on numerous occasions over the past year (Tr. 184). Plaintiff had previously received a note from Dr. Hull on March 7, 2003, excusing him "from school 3-5-03 thru 3-7-03 due to illness." (Tr. 186.) Attendance at school would discredit plaintiff's claims that he is disabled. *See Baker v. Apfel*, 159 F.3d 1140, 1145 (8th Cir. 1998) (where ALJ relied in part on claimant's ability to attend four hours of classes daily in finding him capable of performing full range of light work, substantial evidence supported ALJ's conclusion).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed and plaintiff's complaint should be dismissed with prejudice.

DATED this 8th day of May 2006.

                                              **/s/ Beverly Stites Jones**
                                      _____
                                      HON. BEVERLY STITES JONES
                                      UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)